

FILED & ENTERED

SEP 29 2015

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY fortier     DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

In re:

John Jay Marshall

Debtor(s).

Case No.: 2:14-bk-16539-TD

CHAPTER 7

**ORDER DENYING RANDY SIMON'S MOTION FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSES FOR DEFENSE OF APPEAL OF SALE ORDER AND PRESERVATION OF FERRARI AUTOMOBILE**

Date:     July 29, 2015
Time:     10:00 a.m.
Courtroom:   1345

## INTRODUCTION

John Jay Marshall (Debtor) filed a chapter 7 bankruptcy petition on April 4, 2014.

Randy Simon (Plaintiff or Simon) is an unsecured creditor of the bankruptcy estate

based on an August 5, 2013 Los Angeles Superior Court judgment he holds against

Debtor for breach of contract in the principal amount of $350,000.

Plaintiff filed an adversary complaint on July 7, 2014 seeking nondischargeability

1    of the superior court judgment pursuant to §§ 523 and 727 of the Bankruptcy Code[1].

2    The adversary complaint alleged, among other things, that Debtor fraudulently

3    conveyed title to a 1973 Ferrari Dino Spider (Ferrari) to his daughter, Stephanie

4    Marshall (Ms. Marshall), in 2009 in order to become "judgment proof" with respect to

5    Plaintiff's state court action against him.

6    The adversary complaint further alleged that Plaintiff had filed a second state

7    court action, naming Debtor and Ms. Marshall as defendants, on August 13, 2013,

8    alleging, among other things, their fraudulent concealment of the Ferrari. This court

9    granted Plaintiff relief from the automatic stay on June 11, 2015 to pursue his

10   application for turnover of the Ferrari in the superior court.

11   **The Trustee's sale motion.**  On October 9, 2014, Debtor's chapter 7 trustee

12   (Trustee) filed a motion to authorize a sale to Simon of the estate's rights, if any, in the

13   Ferrari and in certain other personal property items related to Debtor's chapter 7 case

14   (the Motion)[2].  The Motion and the attached Purchase and Sale Agreement specified

15   that the items subject to the Trustee's sale included

> any rights that the Trustee and the Estate have or may have to seek any turnover
> order(s), as well as rights to avoid fraudulent transfer and/or preferential transfers
> by the Debtor and/or the Debtor's Corporations to others, including any claims
> which may be brought against Stephanie and Stephanie's Corporations.

The Motion further specified that

> the Sale shall be 'as is' and 'where is' with no warranties or representations of
> any nature, including, without limitation … [the estate's] ownership of the Assets.
> The Sale shall be subject to all liens, encumbrances, rights and claims of any
> kind or nature, including the right and/or obligation to litigate in order to preserve
> and/or secure the assets referred to herein.

On October 22, 2014, Ms. Marshall filed a limited Opposition to the sale motion in

---

[1] All statutory references are to Title 11 of the United States Code.

[2] The other assets included in the Trustee' sale were Debtor's interest in royalties from the motion picture "The
Exorcist" and Debtor's three corporations Location Creations, Inc., Location Cameras, Inc. and John Marshall
Entertainment, Inc.

which she requested authorization to bid on the assets.

Ms. Marshall failed to appear at the December 10, 2014 hearing on the Trustee's sale motion. Upon Simon's objection, the court found that Ms. Marshall's testimony was necessary to determine her qualification to bid and continued the hearing on the Trustee's sale motion to January 14, 2015.

Ms. Marshall again failed to appear at the January 14, 2015 sale motion hearing. Ms. Marshall's attorney appeared and explained that Ms. Marshall was unable to appear due to her professional responsibilities. Instead, Patrick Pittelli, who identified himself as a family friend of Debtor and Ms. Marshall, appeared without counsel and testified to his intention to bid on the package of assets subject to the Trustee's proposed sale. The court allowed Pittelli to be examined by Simon's counsel as to the source of funds for his anticipated bid. Pittelli explained that his bid would be funded by $100,000 of his own money; $40,000 from a business associate; $63,000 from Ms. Marshall; and $150,000 from the Debtor himself.

At the conclusion of the January 14, 2015 hearing, the court announced its findings and conclusions in favor of Simon and against Pittelli and Ms. Marshall (1) disqualifying Pittelli from bidding on the property subject to the sale Motion and (2) approving the Motion and Purchase and Sale Agreement. A Sale Order memorializing the oral findings, conclusions, and rulings at the January 14 hearing was entered on February 4, 2015.

On January 22, Ms. Marshall filed a Notice of Appeal of the Sale Order to the Bankruptcy Appellate Panel (BAP). Appellant's Statement of Issues on Appeal filed on February 2, 2012 described the issues as follows:

> 1. Did the Bankruptcy Court abuse its discretion by overruling the business judgment of the Chapter 7 Trustee, excluding Patrick Pittelli

as an over bidder [sic] in an 11 U.S.C. Section 364 [sic] sale of assets, and thus not obtaining the maximum recovery for the estate?

2. Did the Bankruptcy Court err in finding that Randy Simon was a "good faith" bidder under 11 U.S.C. Section 363(m), even though Randy Simon had entered into a collusive contract with the Trustee with the purpose and intent of chilling the bidding process in a Section 363 sale?

Simon challenged Ms. Marshall's appeal, and on July 1, 2015, the BAP issued an order dismissing Ms. Marshall's appeal for lack of standing.

Simon then filed a motion with this court seeking an award against Debtor's bankruptcy estate of approximately $58,180 in attorney's fees and costs incurred in defending the BAP appeal, and approximately $10,456 in fees and costs for preparing the motion. Simon cited § 503(b)(1)(A), or, in the alternative, § 503(b)(4) as the statutory basis for his claim.

Simon also seeks reimbursement, on the same statutory grounds, for the $6,792.27 in expenses he claims to have incurred in the superior court in connection with his turnover application for storage costs incurred for the Ferrari. The Trustee challenged Simon's motion.

After a hearing on July 29, 2015, this court took the matter under advisement.

## DISCUSSION

The "basic point of reference when considering the award of attorney's fees is the bedrock principle known as the American Rule: Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." Baker Botts L.L.P. v. ASARCO LLC, 135 S.Ct. 2158, 2164 (2015).

For the reasons set forth below, neither of the Bankruptcy Code provisions Simon relies on, 11 U.S.C. §§ 503(b)(1)(A) and 503(b)(4), authorizes an award of fees

for Simon's participation in Ms. Marshall's appeal of the Sale Order to the BAP.

The Purchase and Sale Agreement does not provide for Simon's requested fees. The agreement provides that the sale of estate assets to Simon was "subject to . . . the right and/or obligation to litigate in order to preserve and/or secure the assets referred to" therein. By its terms, the contract plainly foresaw the possibility of future litigation with respect to the sale; it did not allocate or mention fees.

Upon further reflection following the court's July 29, 2015 hearing, the court now finds that Plaintiff's request for storage costs is also without support in the Code or the agreement. As set forth more fully below, the Ferrari was never adjudicated to be and never was property of the Debtor's bankruptcy estate. Thus, its safekeeping has not "preserv[ed] the estate" under § 503(b)(1)(A) or made a "substantial contribution to the estate" under § 503(b)(4).

**A.  Simon Is Not Entitled to Attorney's Fees Pursuant to § 503(b)(1)(A).**

Section 503(b)(1)(A) defines administrative expenses and provides a nonexclusive list of allowable expenses including "the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case." See 11 U.S.C. § 503(b)(1)(A); see also In re BCE W., L.P., 319 F.3d 1166, 1172 (9th Cir. 2003).

"The availability of the priority [for administrative expenses, as provided in § 507(a)(2)] encourages third parties to deal with a business that has filed in bankruptcy, because these parties will be paid ahead of other creditors." Id. (citing In re Abercrombie, 139 F.3d 755, 757 (9th Cir. 1998)).

In order to keep administrative costs to the estate at a minimum, the "actual, necessary costs and expenses of preserving the estate" are construed narrowly.

<u>Microsoft Corp. v. DAK Indus., Inc.</u> (<u>In re DAK Indus., Inc.</u>), 66 F.3d 1091, 1094 (9th Cir.1995).

"To establish an administrative expense claim, a claimant must show that the debt: (a) arose from a transaction with the debtor . . . (or, alternatively, that the claimant gave consideration to the [debtor]); and (b) directly and substantially benefitted the estate." <u>Id.</u>

Section 503(b)(1)(A) makes no reference to attorney's fees.  Simon has not cited any case in which a creditor—or, for that matter, a transferee in a chapter 7 trustee's asset sale under section 363—has received attorney's fees as an administrative expense pursuant to § 503(b)(1)(A).  This court is unaware of any such case.

Simon relies on <u>In re 800Ideas.com, Inc.</u>, 496 B.R. 165, 175 (9th Cir. BAP) for the proposition that the word "includes," as it appears in section 503(b)(1)(A), is "not limiting."  Simon argues, on the basis of this observation, that it is "irrelevant" that attorney's fees do not figure among the enumerated administrative expenses listed in § 503(b)(1)(A).  This court concludes that <u>In re 800Ideas</u> is irrelevant to this case, as it does not concern an award of attorney's fees.  Given the absence of any case specifically recognizing attorney's fees as "actual, necessary costs and expenses of preserving the estate," Simon's position is untenable.  More so given the fact that § 503(b)(4) expressly provides for "reasonable compensation for professional services rendered by an attorney [meeting specified criteria not present here]."

Simon's expansive interpretation of "actual, necessary expenses" is unsound for an even more fundamental reason, however.

It is clear, as Simon points out, that his tender of $160,000 to the Trustee under the Purchase and Sale Agreement constituted "a transaction" with the estate supported

1   by "consideration." In re DAK Indus., Inc., 66 F.3d at 1094.  It is equally clear that the

2   sale transaction "directly and substantially benefitted the estate." Id.

3       The problem with Simon's argument is that the "debt" which "arose from

4
    [Simon's] transaction" with the estate was none other than the $160,000 of
5

6   consideration Simon promised, and delivered, under the Purchase and Sale agreement.

7   See id.

8       Simon's collateral request for $58,180 in legal fees associated with the BAP

9   appeal is outside the scope of the underlying exchange; does not "arise from" Simon's

10  transaction with the estate under In re DAK Indus., Inc; and does not fall within the

11
    language or purpose of § 503(b)(1)(A).
12

13      **B.  Simon Is Not Entitled to Attorney's Fees Pursuant to § 503(b)(4).**

14      Simon argues, in the alternative, that the requested fees qualify as administrative

15  expenses under § 503(b)(4).

16      Section 503(b)(4) provides for "reasonable compensation for professional

17
    services rendered by an attorney . . . whose expense is allowable under subparagraph
18
    (A), (B), (C), (D), or (E) of paragraph (3) of this subsection[.]"
19

20      Simon asserts that he has made a "substantial contribution" to the Debtor's

21  bankruptcy case within the meaning of section 503(b)(3)(D).  That provision allows

22  reimbursement of "the actual, necessary expenses . . . incurred by a creditor . . . in

23  making a substantial contribution in a case under chapter 9 or 11 of this title[.]"

24      There are two important flaws in Simon's argument.
25

26      First, this is a chapter 7 case, not a case "under chapter 9 or 11" of the

27  Bankruptcy Code.  Thus, § 503(b)(3)(D) does not apply.

28      Second, § 503(b)(3)(D) would not support Simon's fee request even if it did apply

to chapter 7 cases.  The legal fees Simon incurred by participating in the BAP appeal

were not in furtherance of his role as a creditor of the bankruptcy estate.  Rather, Simon

was seeking to preserve his interests as a purchaser of estate assets pursuant to § 363

of the Bankruptcy Code.  Thus, Simon's requested fees do not qualify as the "actual,

*necessary* expenses" of "a creditor."

**C. <u>Simon's Equitable Arguments in Support of His Fee Request Are</u>**

**<u>Unpersuasive.</u>**

Plaintiff invokes a number of equitable principles to justify his request for attorney

fees.  He maintains, for example, that denial would "unjustly enrich the Trustee" and

compromise the "systemic integrity" of the bankruptcy process.  Leaving aside the fact

that equity generally does not support an award of attorney fees, <u>Baker Botts L.L.P. v.

ASARCO LLC</u> , none of Simon's arguments is persuasive.

One of them, however, should be addressed here.  Simon argues that the

Trustee breached his fiduciary duty to the estate by taking no part in Ms. Marshall's

BAP appeal, but that, had the Trustee defended the Sale Order, his fees would have

qualified as administrative expenses.  Simon urges that his own fees incurred in

defending the Sale Order ought to be treated as an administrative expense.

While innovative, this argument is based on a doubtful premise.   As a general

matter, a bankruptcy trustee has a fiduciary obligation to conserve the assets of the

estate and to maximize distribution to creditors.  <u>See</u>, <u>e.g.</u>, <u>In re Rigden</u>, 795 F.2d 727,

730 (9th Cir. 1986).  A trustee's decisions are evaluated under the "business judgment

rule."  <u>See</u> <u>id.</u>  ("A bankruptcy or reorganization trustee has a duty to exercise that

measure of care and diligence that an ordinary prudent person would exercise under

similar circumstances.").

1    Here, the Trustee appears to have had good reason not to dissipate estate

2  assets by joining in Simon's defense of the Sale Order.  The Trustee has convincingly

3  argued that, had Ms. Marshall prevailed in her appeal, the BAP would have remanded

4
   to this court to allow Pittelli to bid.  Such a course of events may well have resulted in a
5
   higher sale price.
6

7    In any event, the estate would have regained possession of those assets which

8  Simon himself valued at $160,000.  Simon's efforts on appeal, then, did not preserve

9  the value of the bankruptcy estate.

10
    **D.  <u>Simon Is Not Entitled to Reimbursement of Storage Costs.</u>**
11

12    This court has never adjudged the Ferrari to be an asset of the bankruptcy

13  estate.  Nor has this court ever ordered, authorized, or otherwise approved of its

14  storage.  Simon's alleged costs in storing the Ferrari, if any, are incident to his superior

15  court action for fraud and application for turnover, not Debtor's bankruptcy.  As such,

16  they are not administrative expenses that "preserve the estate" or "substantially

17  contribute" to the chapter 7 case.

18

19    Simon argues that the Trustee "knew the Ferrari was kept at Blackhorse [storage

20  facility] and that his sale of 'right, title and interest' in an asset of this nature was plainly

21  enhanced by having the vehicle safely stored[.]"  Simon adds that the Trustee "had a

22  direct interest in" the Ferrari and "could have taken possession of it directly" as soon the

23  superior court adjudged the Ferrari to be John Marshall's property on June 15, 2015.

24    Simon's argument is at odds with the nature of the Purchase and Sale
25
    Agreement.  One of the effects of the sale agreement was to prevent the Ferrari from
26
    ever becoming an estate asset.  In exchange for the estate's interest in Debtor's
27
    personal property items and for the Trustee's relinquishment of any and all rights with
28

respect to the car, Plaintiff offered $160,000.  Correspondingly, the Trustee, having sold

all of the estate's interest to Plaintiff, had no interest in the Ferrari at the time of the

superior court's June 15, 2015 order.

The storage of the Ferrari certainly preserved the car's value, as Simon

contends.  But the Trustee's sale to Simon was negotiated on an as-is, where-is basis

with no warranties as to Ferrari's status as an estate asset.  Simon got what he paid for.

### CONCLUSION

For the foregoing reasons, Simon's motion seeking recovery from the chapter 7

estate is denied.

**IT IS SO ORDERED.**

# # #

Date: September 29, 2015

Thomas B. Donovan
United States Bankruptcy Judge

-10-